UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY WOOD,

   Plaintiff,            Hon. Paul L. Maloney

v.                     Case No. 1:12-CV-351

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age on her alleged disability onset date. (Tr. 10, 120). She successfully completed high school and worked previously as a bartender, chiropractor assistant, home health aide, project administrator, and purchasing agent. (Tr. 126, 137-41).

Plaintiff applied for benefits on May 22, 2008, alleging that she had been disabled since January 1, 2006, due to back "problems," depression, and "pinched nerves." (Tr. 10, 125). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 73-113). On October 27, 2010, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Toni McFarland. (Tr. 30-68). In a written decision dated December 3, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 10-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

X-rays of Plaintiff's lumbar spine, taken on February 8, 1990, revealed "Grade I spondylolisthesis...affecting L5."[1] (Tr. 186). X-rays of Plaintiff's lumbosacral spine, taken on December 29, 1992, revealed "Grade 0-1 Spondylolisthesis...affecting L5 [with] narrowing of the 5th lumbar intervertebral disc space." (Tr. 185). X-rays of Plaintiff's cervical spine, taken the same day, were "normal." (Tr. 185).

On November 3, 1993, Plaintiff underwent back surgery performed by Dr. Vicente Gracias and Dr. Thomas Schwaderer. (Tr. 190-200). Specifically, the doctors performed "decompressive lumbar laminectomies of L4, L5 and posterolateral fusion of L5-S1." (Tr. 190). On December 9, 1993, Plaintiff was examined by Dr. Gracias. (Tr. 200). Plaintiff reported that "her legs feel good" and that "she is happy with the results of surgery." (Tr. 200). The doctor reported that Plaintiff's "motor, sensory and deep tendon reflex exams were within normal limits" and "straight leg raising was negative." (Tr. 200).

Plaintiff "fell off" her horse in May 2003 after which she began experiencing "back pain." (Tr. 273). X-rays of Plaintiff's lumbar spine, taken on August 14, 2003, revealed "Grade I spondylolisthesis of L5 on S1 associated with spondylolysis." (Tr. 273). X-rays of Plaintiff's lumbar spine, taken on March 20, 2004, revealed "old compression fractures involving the inferior

---

[1] Spondylolysis is a "defect in the connection between [the] vertebrae" which results from "a weakness in a section of the vertebra called the pars interarticularis, the thin piece of bone that connects the upper and lower segments of the facet joints." Spondylolysis, available at http://my.clevelandclinic.org/disorders/Back_Pain/hic_Spondylolysis.aspx (last visited on August 22, 2013). This defect "can lead to small stress fractures (breaks) in the vertebrae that can weaken the bones so much that one slips out of place, a condition called spondylolisthesis." The "initial treatment for spondylolysis is always conservative, and is aimed at reducing pain, permitting the fracture to heal, and returning the person to normal function." *Id.*

end plate of T12 and superior end plate of L1[,] small, focal central disc protrusions at T12-L1 and L4-5[, and] Grade I anterolisthesis[2] of L5 on S1." (Tr. 256).

On November 19, 2007, Plaintiff participated in an MRI examination of her cervical spine the results of which were "normal." (Tr. 369). That same day, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed degenerative disc disease at L4-L5 and L5-S1 with no evidence of a herniated disc or central canal or neural foraminal stenosis. (Tr. 367-68). On November 30, 2007, Plaintiff participated in electrodiagnostic testing of her upper extremities the results of which were "normal" with "no evidence of myopathy, radiculopathy nor peripheral neuropathy." (Tr. 301). On September 17, 2008, Plaintiff participated in a CT examination of her head the results of which were "normal." (Tr. 361).

On December 11, 2008, Plaintiff was examined by Dr. Jolene Key. (Tr. 383-85). Plaintiff reported that she was experiencing "pain everywhere...way more pain than just in my back." (Tr. 383). A physical examination revealed the following:

> Abdomen is soft with slight right upper quadrant tenderness, without guarding. No organomegaly or masses are noted. Extremities reveal no clubbing, cyanosis or edema and pulses are palpable throughout. Skin exam reveals no rash, nodules or tophi. Neurologic exam reveals no sensory or motor deficits and her gait is normal. Articular exam reveals TMJs, cervical spine, shoulders, elbows, wrists, small joints of the hands, hips, ankles and MTP joints all to have normal range of motion without any swelling or tenderness. She makes 100% fists and has good grip strength. Both knees are mildly tender with walking only, but not with palpation or range of motion. There is no limitation and no synovitis. She has good range of motion of the back. Her exam is most remarkable for soft tissue tender points,

---

[2] Anterolisthesis refers to a circumstance in which "the upper vertebral body is positioned abnormally compared to the vertebral body below it." Anterolisthesis, available at http://www.cedars-sinai.edu/Patients/Health-Conditions/Anterolisthesis.aspx (last visited on August 22, 2013). More specifically, anterolisthesis is a condition in which "the upper vertebral body slips forward on the one below." The amount of slippage is graded on a scale of 1 to 4, with a grade 1 denoting "mild" slippage and grade 4 denoting "severe" slippage. *Id.*

> particularly around the trapezius, upper and lower arms and the elbow
> areas, posterior pelvis, trochanteric bursa areas and medial thighs,
> calves and knees.

(Tr. 384).

Dr. Key diagnosed Plaintiff with "diffuse" polyarthralgias and myalgias, but noted that she discerned "no evidence of an inflammatory arthritis." (Tr. 384). The doctor further observed that the "tenderness" Plaintiff experienced on a soft tissue examination was "most consistent with decondition[ing] labeled as fibromyalgia." (Tr. 384). Plaintiff was instructed to maintain "regular sleep hours," avoid caffeine late in the day, and begin a home exercise program of stretching and aerobic exercises. (Tr. 385).

On March 16, 2009, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed "Grade 1-2 anterior spondylolisthesis of L5 relative to S1" with "no marrow edema or signal seen in the lumbar spine" and "no significant central canal stenosis or neural foraminal encroachment." (Tr. 342-43). On March 30, 2009, Plaintiff participated in a doppler imaging examination of her lower extremities the results of which revealed "no evidence of a deep venous thrombus in either lower extremity." (Tr. 341).

On March 31, 2009, Plaintiff was examined by Dr. Gracias. (Tr. 344). Plaintiff reported that she was experiencing pain in her back and lower extremities which she characterized as "sometimes" reaching "10/10" level. (Tr. 344). Straight leg raising was "negative" and the results of a motor examination were "within normal limits in all four extremities." (Tr. 344). The results of a sensory examination were "within normal limits in all four extremities." (Tr. 344). A deep

tendon reflex exam was symmetrical in all four extremities. (Tr. 344). Babinski[3] testing was negative and Plaintiff exhibited no evidence of clonus.[4] (Tr. 344). On April 1, 2009, Plaintiff participated in a bone density examination the results of which were "normal." (Tr. 345-50).

On October 1, 2009, Plaintiff was examined by Dr. Joseph Sage. (Tr. 436-37). Plaintiff reported that she was experiencing pain and swelling in her legs. (Tr. 436). An examination of Plaintiff's lower extremities revealed "mild" swelling. (Tr. 436-37). The results of a venous duplex examination were "normal" and the doctor discerned "no evidence of chronic deep or superficial venous insufficiency." (Tr. 437). Dr. Sage concluded that Plaintiff was experiencing swelling due to "fluid retention." (Tr. 437). Accordingly, the doctor instructed Plaintiff to "remain as active as possible" because "good muscle tone will help prevent fluid retention and swelling." (Tr. 437).

On February 5, 2010, Dr. Phillip Gaca completed a report regarding Plaintiff's physical limitations. (Tr. 442-45). The doctor reported that in a "competitive work situation," Plaintiff is capable of walking one half mile, sitting continuously for 15-20 minutes, and standing continuously for one hour. (Tr. 443-44). The doctor reported that during an 8-hour work day, Plaintiff can sit for "less than 2 hours" and can stand/walk for "about 2 hours." (Tr. 444). The doctor further reported that Plaintiff required a job that "permits shifting positions at will from sitting, standing or walking." (Tr. 444). The doctor also reported that Plaintiff can "never" lift any amount of weight. (Tr. 444).

---

[3] Babinski test is a neurological test designed to discern damage to the central nervous system. *See* Babinski, available at http://www.medterms.com/script/main/art.asp?articlekey=7171 (last visited on August 22, 2013).

[4] Clonus refers to a "series of fast involuntary [muscle] contractions" which can be caused by "an imbalance of signals from the central nervous system." *Spasticity*, available at http://www.webmd.com/pain-management/pain-management-spasticity (last visited on August 22, 2013).

On June 17, 2010, Plaintiff participated in a physical work performance evaluation conducted by Spectrum Health United Memorial-Rehabilitation Services. (Tr. 513-15). This evaluation assessed Plaintiff's capabilities in four different areas: dynamic strength, position tolerance, mobility, and endurance. (Tr. 513). Based on Plaintiff's performance, the evaluator concluded that Plaintiff "is capable of performing physical work at the light level." (Tr. 513). The examiner reported that Plaintiff was capable of performing the following activities on an occasional (defined as "up to 1/3 of the day") basis: (1) lift 21 pounds from floor to waist; (2) lift 18 pounds from waist to eye level; (3) lift 26 pounds with two hands; (4) lift 23 pounds with one hand; (5) push 38 pounds; (6) pull 20 pounds; (7) work in a standing position with her arms over her head; (8) work in a "bent over-standing/stooping" position; (9) work in a "squatting/crouching" position; and (10) work in a "bent over sitting" position. (Tr. 514). The examiner also reported that Plaintiff can frequently (defined as "1/3 to 2/3 of the day") perform the following: (1) sit; (2) stand; (3) work in a kneeling position; (4) climb stairs; (5) walk; (6) perform "repetitive trunk rotation" in a standing position; and (7) perform "repetitive trunk rotation" from a sitting position. (Tr. 514). The only activity which the examiner reported Plaintiff could never perform was "repetitive squatting." (Tr. 514).

At the Administrative Hearing, Plaintiff testified that she can sit continuously for 30 minutes and stand continuously for 15 to 20 minutes. (Tr. 44). Plaintiff also reported that she can lift "a gallon of milk occasionally." (Tr. 44). Plaintiff testified that she could walk "maybe an eighth of a mile." (Tr. 44). Plaintiff reported that she could sit for four hours each day, but also has to spend several hours each day laying in a reclining chair with her legs raised. (Tr. 46-47). Plaintiff

reported that several days each week her level of pain is so significant that she cannot perform any daily activities or housework. (Tr. 47-48).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

9

to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) disorders of the back; (2) depression; (3) lymphedema of the lower extremities; and (4) hernia, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 12-14).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she is limited to unskilled work; (2) she requires a sit/stand option every 30-60 minutes; (3) she can only occasionally bend, twist, turn, climb, crawl, squat, and kneel; (4) she cannot perform prolonged walking; and (5) she cannot be exposed to unprotected heights or moving machinery. (Tr. 14).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis

added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Toni McFarland.

The vocational expert testified that there existed approximately 6,950 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 64-65). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to benefits.

    a.    The ALJ Properly Assessed the Medical Evidence

On February 5, 2010, Dr. Gaca completed a report regarding Plaintiff's physical limitations. (Tr. 442-45). The doctor reported that in a "competitive work situation," Plaintiff is capable of walking one half mile, sitting continuously for 15-20 minutes, and standing continuously for one hour. (Tr. 443-44). The doctor reported that during an 8-hour work day, Plaintiff can sit for "less than 2 hours" and can stand/walk for "about 2 hours." (Tr. 444). The doctor further reported that Plaintiff required a job that "permits shifting positions at will from sitting, standing or walking." (Tr. 444). The doctor also reported that Plaintiff can "never" lift any amount of weight. (Tr. 444). Plaintiff argues that because Dr. Gaca was her treating physician, the ALJ was required to afford controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at

544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ afforded "limited weight" to Dr. Gaca's opinion for several reasons. The ALJ first observed that Dr. Gaca's opinions were inconsistent with his contemporaneous treatment notes. (Tr. 18). The record contains only two pages of Dr. Gaca's treatment notes. (Tr. 428-29). Such are largely unintelligible, but to the extent the doctor's notes can be read they do not support the extreme limitations the doctor later articulated. The ALJ also observed that Dr. Gaca's opinions are "not well supported by medically acceptable diagnostic or clinical techniques." (Tr. 18). As the discussion above indicates, the objective medical evidence simply does not support the extreme limitations found by Dr. Gaca. The ALJ also noted that while Dr. Gaca opined that Plaintiff was unable to lift any amount and could sit for only two hours daily, Plaintiff testified at the administrative hearing that she can sit for four hours each day and can lift a gallon of milk. (Tr. 18, 44, 47).

Likewise, the numerous examinations conducted by various other physicians have produced results in direct contradiction to Dr. Gaca's opinion and consistent with the ALJ's RFC determination. For example, the results of a March 31, 2009 examination conducted by Dr. Gracias, who previously performed surgery on Plaintiff's back, are entirely inconsistent with Dr. Gaca's opinions. (Tr. 344). The results of an October 1, 2009 examination by Dr. Sage were likewise inconsistent with Dr. Gaca's opinions. (Tr. 436-37). Furthermore, the results of the physical work performance evaluation, conducted shortly after Dr. Gaca articulated the opinions in question, were

not consistent with Dr. Gaca's opinions. (Tr. 513-15). In sum, the ALJ articulated good reasons, supported by substantial evidence, for affording less than controlling weight to Dr. Gaca's opinions.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

As noted above, Plaintiff testified at the administrative hearing that she is limited to an extent beyond that recognized by the ALJ in his RFC determination. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16-17). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

> established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

Contrary to Plaintiff's assertions, the ALJ discussed at length his decision to discount Plaintiff's subjective allegations. As the ALJ detailed, the objective medical evidence as well as the results of numerous physical examinations, as detailed above, are not consistent with Plaintiff's allegations of extreme pain and limitation. (Tr. 14-17). In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the undersigned recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 29, 2013

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge